UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
. . . . . . . . . . . . . . . .
. . . S SDNY
 DOCUMENT
 ELECTRONICA
 DOC #: _____
 DATE FILED: _ｌ0ｰ3ｰｌ3 _
. . . . . . . . . . . . . . . .
```

LAUREN BALLINGER, *et al.*

                    Plaintiffs,

     -v-

ADVANCE MAGAZINE PUBLISHERS, INC.
d/b/a CONDE NASTE PUBLICATIONS,

                    Defendant.

No. 13 Civ. 4036 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

The Court is in receipt of the attached letter from the parties, dated September 27, 2013,

concerning, *inter alia*, a disagreement between the parties as to (1) which five magazines should

serve as the sample for discovery relating to the putative Rule 23 class; (2) whether Defendant

may use evidence from magazines outside the sample in opposing a motion for certification of

the Rule 23 class, and (3) whether Defendant must provide Plaintiff with contact information for

the interns in the sample that is chosen.  As Defendant has proposed limiting discovery to only

five magazines, the Court finds it reasonable that Plaintiff select the five magazines to include in

the sample.  As to the other issues, the Court agrees with Defendant that they are not ripe for the

Court to decide at this point and "should be discussed by the parties and any issues, then raised

with the Court."  Accordingly, IT IS HEREBY ORDERED THAT Plaintiffs shall choose the five

magazines that will comprise the sample for discovery relating to the Rule 23 class.  As to

whether contact information must be provided and what information Defendant may use in

opposing a motion to certify the class, the parties shall first seek to resolve those issues when

they arise and, if unable to do so, raise them with the Court in the manner set forth in my Individual Practices concerning discovery disputes.   In addition, the Court is simultaneously ordering a Case Management Plan with which the parties shall comply.


SO ORDERED.

Dated:       October 2, 2013
             New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

2

OUTTEN & GOLDEN LLP

*Advocates for Workplace Fairness*

September 27, 2013

**By Email**
The Honorable Richard J. Sullivan
United States District Court for the Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

     Re:    *Ballinger v. Advanced Magazine Publishers, Inc.*, No. 13 Civ. 4036 (RJS)

Dear Judge Sullivan,

     We represent the Plaintiffs in the above-referenced matter. We write jointly with Defendant, pursuant to the Court's direction at the September 11, 2013 initial case management conference, to set forth the parties' proposals regarding the initial stage of discovery and to submit the enclosed revised proposed scheduling order. The parties have laid out the areas on which they agree, as well as the areas on which they disagree, below.

**Overview of the Claims Asserted in the Complaint**

     In this action, commenced on June 13, 2013, Plaintiffs assert individual, as well as class and collective, claims. Specifically, Plaintiff Lauren Ballinger alleges she was misclassified as an intern while engaged in *W Magazine's* fine jewelry and accessories department from approximately June 2009 through October 2009. She asserts claims under NYS Labor Law and seeks to recover unpaid wages on her own behalf and, pursuant to Fed. R. Civ. P. 23, on behalf of a class of "all persons who have worked as interns in the fashion departments, accessories departments, and/or jewelry departments of Condé Nast magazines in New York and who were not paid the minimum wage for all hours worked between June 13, 2007 and the date of final judgment in this action (the 'Intern Class')." (Compl. ¶37).

     Plaintiff Matthew Leib alleges he was misclassified as an intern while engaged by the *The New Yorker* in connection with two internships: from approximately June 2009 to August 2009 and from June 2010 to September 2010. He seeks wages on his own behalf under both the NYS Labor Law and the Fair Labor Standards Act ("FLSA"). He also brings collective claims under the FLSA on behalf of "all persons who have worked as interns at Condé Nast between June 13, 2010 and the date of final judgment in this action, who were not paid the minimum wage for all hours worked, and who elect to join the action (the 'Intern Collective')." (Compl. ¶ 48).

3 Park Avenue, 29th Floor New York, NY 10016   Tel 212 245 1000   Fax 646 509 2060
203 North LaSalle Street, Suite 2100, Chicago, Il 60601   Tel 312 924 4888   Fax 846 509 2075
og@outtengolden.com   www.outtengolden.com

The Honorable Richard J. Sullivan
September 27, 2013
Page 2 of 7

I.      **Discovery Relating to the Named Plaintiffs**

      The parties agree that the initial discovery relating to claims asserted by the named Plaintiffs will relate to each Plaintiff's application and engagement as an intern and his or her activities, supervision, training, and related topics during his or her internship(s), as well as other issues relevant to determining whether either Plaintiff was properly classified as an intern during his or her internship(s).

**Discovery Relating to Corporate-Level Policies**

    Plaintiffs' Position:

      Discovery regarding corporate-level policies and procedures that apply to interns, such as those emanating from Condé Nast's human resources and/or legal departments, is directly relevant to Plaintiffs' class and collective claims and to the merits and there is no reason why Defendant should withhold any part of this information until after the Court rules on Plaintiffs' anticipated Section 216(b) motion. In fact, in his recent decision granting class and collective certification in another intern case, Judge Pauley relied in part on corporate-level documents, including internal memoranda showing that interns were used in place of paid workers, in support of his determination that certification was warranted. *See Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 2495140, at *16 (S.D.N.Y. June 11, 2013).

      Defendant argues unconvincingly that discovery about corporate-level policies and procedures that apply to interns should be limited during the initial phase. First, Defendant ignores the substantial overlap between the time periods covered by the Intern Class and Collective. But more importantly, discovery about *corporate-level* policies and procedures will likely relate to internships throughout the Condé Nast organization, regardless of the brands or departments in which members of the putative class and collective worked. Such discovery is also relevant to Defendant's good faith affirmative defense, as well as whether it acted willfully in failing to properly compensate interns for their work.

    Defendant's Position:

      Plaintiffs' generalized request for discovery related to "corporate-level policies and procedures that apply to interns" is premature, overbroad and not specifically linked to the claims they have asserted in the Complaint.

      First, the putative Rule 23 Intern Class represented by Plaintiff Ballinger and the putative FLSA Intern Collective represented by Plaintiff Lieb have *different* relevant time periods, and *different* definitions and, thus, involve *different* Condé Nast brands, departments and interns.

- Rule 23 Intern Class, represented by Ballinger:

  - Allegedly relevant period:  June 13, 2007 to present

The Honorable Richard J. Sullivan
September 27, 2013
Page 3 of 7

       o  Allegedly relevant magazines and interns:  New York-based interns engaged in fashion, jewelry and accessories "closets" or with responsibilities in such closets ("Closet Interns").  Thus, not all magazines are relevant, as some do not have Closet Interns.  Moreover, even within magazines with Closet Interns, the Rule 23 claims only relate to the "closets," and do not extend to other departments or areas in which non-class member interns may have been engaged.

- FLSA Intern Collective, represented by Leib:

       o  Allegedly relevant period:  June 13, 2010 to present

       o  Allegedly relevant magazines, other brands and corporate departments and interns:  Interns – located around the U.S. – who allegedly were engaged at any of Defendant's magazines or other brands (without any limitation to the departments or areas in which they may have been engaged), and also interns engaged in Defendant's corporate departments.

Although Defendant is willing to agree to conduct certain corporate-level discovery with respect to the putative Rule 23 class and FLSA collective during the initial discovery phase, it does not agree to the breadth of Plaintiffs' proposal for such discovery and believe that, at this point, it is premature for the Court to rule on the breadth of any corporate-level discovery. Defendant requests that the Court wait to rule on the corporate-discovery issues until Plaintiffs have served their discovery requests and Defendant has had an opportunity to review, object and/or respond to those requests.  Defendant's objections and responses (including any production) are likely be governed by, among other things, the breadth of the request, whether it is relevant to the Rule 23 or FLSA claims.  In addition, Defendant anticipates that if the parties meet and confer about the specific request and objections, they may be able to reach agreements concerning the breadth of the requests and scope of any search for responsive documents, including with respect to any sources, custodians and search terms.  Nevertheless, Defendant sets forth its general position with respect to the corporate-level discovery below, addressing the Rule 23 and FLSA corporate-level discovery issues separately.

*Corporate Discovery with Respect to Rule 23 Class:* Only the Closet Interns (i.e., interns engaged or with responsibilities in fashion, jewelry and accessories closets) are at issue with respect to the Rule 23 Class claims.  Accordingly, any corporate-level discovery with respect to the Rule 23 Intern Class claims should be limited to those corporate-level policies and practices that applied with respect to Closet Interns.  Defendant should not be required to produce corporate-level discovery as it relates to other magazines or non-Closet Interns.  This is particularly true with respect to June 2007 to June 2010 when the only claims at issue concern Closet Interns.

The Honorable Richard J. Sullivan
September 27, 2013
Page 4 of 7

*Corporate Discovery with Respect to FLSA Collective:* Defendant does <u>not</u> ask to delay corporate-level discovery with respect to the magazines, other brands and corporate departments relevant to the FLSA Intern Collective until after Plaintiffs move for conditional certification. However, given the number of magazines, other brands and corporate departments at issue – and the possibility of more than one hundred custodians – the parties will need to adopt a more nuanced approach to producing this discovery. Defendant anticipates that once the parties have exchanged requests and objections, and have attempted to narrow the issues based on those responses, they will be in better position to raise any outstanding issues before the Court. This is particularly important given the potential for exorbitant discovery costs in light of the uncertainty as to how many interns decide to opt-in and which brands, magazines or departments will be at issue.

## II.   Discovery Relating to the FLSA Collective Claims

Plaintiffs intend to move for conditional certification under Section 216(b) of the FLSA early in the case and will file a pre-motion letter requesting permission to do so within the next few weeks. The parties have agreed that discovery relating to individual FLSA collective members (who do not overlap with the members of the Rule 23 class), if any, will await the resolution of that motion (to the extent such discovery does not overlap with other categories of discovery set forth herein). If Plaintiffs prevail on the motion, the parties will then meet and confer following the expiration of the notice period. At that time, they will discuss and seek to reach an agreement on the parameters for discovery relating to the FLSA collective, including the possibility of selecting a representative sample of magazines, departments and/or opt-in plaintiffs for discovery.

## III.   Discovery Relating to the Putative Rule 23 Class

The parties have reached agreement on certain aspects of discovery relating to the putative Rule 23 class, but not others.

As contemplated by the Rule 23 class definition, the parties agree that discovery will initially focus on interns who worked in the magazines' "closets," locations where the magazines house clothing, accessories, and/or jewelry, as well as interns who had responsibilities relating to the closets. Defendant has represented that, at present, it understands that the following brands/magazines have one or more closets: Allure; Brides; Condé Nast Traveler; Details; Glamour; Golf Digest; Golf World; GQ; Lucky; Self; Teen Vogue; Vanity Fair; Vogue; W Magazine; Wired; Women's Wear Daily; and Style.com.

The Honorable Richard J. Sullivan
September 27, 2013
Page 5 of 7

The parties disagree on the following issues:

1.  Sample Size for Rule 23 Intern Class  Discovery

Plaintiffs' Position:

Defendant has proposed that initial discovery, including ESI, be limited to five
magazines, including *W Magazine* (where Plaintiff Ballinger worked).  Plaintiffs will agree to
this proposal, subject to the following conditions, which are necessary to ensure that Plaintiffs
have access to the evidence they will need to move for class certification: (1) Defendant agrees
not to oppose Plaintiffs' motion for class certification with evidence from magazines other than
the five selected for discovery, will not argue in its opposition to Plaintiffs' motion that the
motion is deficient because it relies on evidence from the five magazines, and will not argue that
the five magazines are not representative of the rest of the magazines; (2) the parties focus on the
five magazines with the most interns during the class period;[1] and (3) Defendant provides contact
information for interns who worked at the five magazines because these individuals are
witnesses to the relevant policies and practices.

However, if Defendant intends to use evidence from magazines outside the sample, or
will argue that the other magazines are different, then Plaintiffs must have access to the same
breadth of information to which Defendant has access or they will be unfairly disadvantaged.[2]
Plaintiffs believe that the parties can resolve any disputes regarding appropriate ESI search terms
and custodians in order to efficiently target the relevant discovery without undue burden as they
did effectively in the *Glatt* case.

Defendant's Position:

Plaintiffs appear to agree that a sample of five brands with "closets" is appropriate in this
action.  However, they seek to use the agreement to conduct discovery on a sample as an
opportunity to impose "conditions," several of which are unrelated to the discovery framework
this joint letter is intended to address.[3]

---

[1] Defendant's argument that selection of the magazines with the most interns is somehow advantageous to
Plaintiffs misses the point.  By focusing on the brands with the most interns, the parties are more likely to
obtain a larger sample, which is more likely to be representative of the class as a whole.

[2] Plaintiffs are not trying to "impose" conditions on Defendant.  To the contrary, Plaintiffs were willing to
agree to Defendant's sampling approach so long as Defendant could not then exploit their good faith by
using evidence outside of the sample.  Indeed, Defendant's admission that it does not intend to be limited
by the sample demonstrates that Plaintiffs were correct to impose conditions in the first place.

[3] Defendant believes a five magazine sample is appropriate.  Should Plaintiffs press for additional
magazines to be included in the sample, Defendants request that the Court shift as least some of the
additional discovery costs associated with adding those magazines to Plaintiffs.

The Honorable Richard J. Sullivan
September 27, 2013
Page 6 of 7

Defendant does not agree to any of the "conditions" proposed by Plaintiffs. First, it is not appropriate to restrict the five brands that will be included in the sample to only those with the "most" interns in the closets. Plaintiffs' proposal ignores the fact that discovery in class actions is intended to enable the parties and the Court to develop and analyze the facts and determine whether a plaintiffs and the putative class members have claims that are sufficiently similar to warrant class treatment. Selecting only the brands plaintiffs believe have the most interns or will be most favorable to them is not appropriate. Defendant has proposed that Plaintiffs select three brands (the brand at which Ballinger interned and two others), and that Defendant select two brands. This will help ensure that the facts are developed for a cross-section of the magazines.

Defendant also believes that it is inappropriate to condition the selection of the sample size to an agreement to produce contact information. The issues with respect to such a request are separate and the breadth and timing of any such production should be discussed by the parties and any issues, then raised with the Court. Indeed, prior to yesterday, when plaintiffs first asked for a "class list" and today when they raised contact information as a condition, the issues of producing individual contact information was never part of the parties' discussions and exchange of discovery proposals. We also note that it is our understanding, based on our investigation to date, that a contact list for former interns does not exist and that information about putative class members was not centrally maintained, and, in some instances, was not even maintained at the brand- or department-level. Once the sample of magazines is finalized, Defendant anticipates the parties will meet and confer to select an appropriate sample of Closet Interns from within the sample brands on which to conduct initial class discovery.[4]

Defendant does not agree to restrict the magazines it will use in opposing a motion for class certification. Once the parties commence discovery and see what information develops, Defendant may agree to expand certain discovery beyond the five brands. To the extent Defendant identifies individuals with respect to other brands on their disclosures, it envisions discussing with Plaintiffs whether additional discovery is needed. This might also be the case if Plaintiffs identify individuals from non-sample brands.

## IV.   Discovery "Cutoff"

The parties agree that Defendant be permitted to "cut off" its initial production of discovery as of September 30, 2013. The parties recognize that Rule 26(e)(1) of the Federal Rules of Civil Procedure requires a party to supplement discovery, and agree that they will meet and confer as the case progresses to resolve any issues regarding the timing of any supplemental productions.

---

[4] Defendant believes that Plaintiffs' concern about the size of the sample in footnote 1 is unwarranted. Once the sample of magazines is finalized, Defendant is willing to revisit the issue of sample size should the number of interns at those magazines not provide a sufficient sample.

The Honorable Richard J. Sullivan
September 27, 2013
Page 7 of 7

We thank the Court for its attention to these matters.

Respectfully submitted,

Rachel Bien

Enclosure

cc:     Elise Bloom, Esq. (by email)
        Amy Melican, Esq. (by email)
        Joshua Fox, Esq. (by email)
        Adam T. Klein, Esq.
        Juno Turner, Esq.
        Michael N. Litrownik, Esq.