**OUTTEN & GOLDEN LLP**
Rachel Bien
Juno Turner
Michael N. Litrownik
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LAUREN BALLINGER and MATTHEW LEIB, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ADVANCE MAGAZINE PUBLISHERS, INC. d/b/a CONDÉ NAST PUBLICATIONS, <br><br> Defendant. | No. 13 Civ. 4036 (HP) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
## CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
## APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
## <u>APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT</u>

<u>TABLE OF CONTENTS</u>

PAGE(S)

ARGUMENT ...................................................................................................... 1

I.      FACTUAL AND PROCEDURAL BACKGROUND .......................................... 1

      A.      Overview of Litigation .................................................................. 1

      B.      Settlement Negotiations ................................................................ 2

II.     SUMMARY OF THE SETTLEMENT TERMS ............................................ 2

      A.      Settlement Fund ............................................................................ 2

      B.      Class Members ............................................................................. 2

      C.      Releases ....................................................................................... 3

      D.      Allocation Formula ...................................................................... 3

      E.      Attorneys' Fees and Costs ........................................................... 4

      F.      Service Payments ......................................................................... 4

      G.      Settlement Claims Administrator .................................................. 5

III.    CLASS ACTION SETTLEMENT PROCEDURE ......................................... 5

IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................. 6

      A.      The Settlement is Fair, Reasonable, and Adequate ................................. 8

              1.      Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ................................................................. 8

              2.      The Court Cannot Asses the Reaction of the Class Until After Notice Issues (*Grinnell* Factor 2) ........................................................ 9

              3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ................................... 9

              4.      Plaintiffs Would Face Risk If the Case Proceeded (*Grinnell* Factors 4 and 5) ....................................................... 10

5. Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6) ...................................................................... 11

6. Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7) ............................................. 11

7. The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ......................................................... 11

V. CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE .... 12

 A. Numerosity ........................................................................................ 13

 B. Commonality ..................................................................................... 13

 C. Typicality .......................................................................................... 14

 D. Adequacy of the Named Plaintiffs and Their Counsel ......................... 14

 E. Certification Is Proper Under Rule 23(b)(3) ....................................... 15

  1. Common Questions Predmonintes ........................................... 15

  2. A Class Action Is a Superior Mechanism ................................. 16

VI. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ........... 16

VII. THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE ................................................................................. 17

CONCLUSION .................................................................................................... 19

TABLE OF AUTHORITIES

PAGE(S)

CASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................15

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom.*
    *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ...............................8, 9, 10

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................17

*Capsolas v. Pasta Res. Inc.*,
    No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012).......................15, 17

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).......................................................................8, 12

*Clem v. Keybank, N.A.*,
    No. 13 Civ. 789, 2014 WL 1265909 (S.D.N.Y. Mar. 27, 2014) .......................7, 16

*Clem v. Keybank, N.A.*,
    No. 13 Civ. 789, 2014 WL 2895918 (S.D.N.Y. June 20, 2014)............................8, 10, 11, 14

*Cnty. of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1422 (E.D.N.Y. 1989) .............................................................12

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)..........................................................................13

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)..........................................................................15

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..........................................................................15

*Damassia v. Duane Reade Inc.*,
    250 F.R.D. 152 (S.D.N.Y. May 27, 2007) .......................................................15

*Dziennik v. Sealift, Inc.*,
    No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007).........................15

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)............................................................... *passim*

iv

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)......................................................................................13

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)................................................................................................13

*Glatt v. Fox Searchlight Pictures, Inc.*,
    293 F.R.D. 516 (S.D.N.Y. 2013) .............................................................10, 11, 15

*Goldberg v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)........................................................................................8

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)....................................................................................16

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ................................................................................7

*Marisol v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)....................................................................................14

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998)......................................................................................6

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ............................8

*Toure v. Cent. Parking Sys.*,
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ..........................15

*In re Traffic Exec. Ass'n*,
    627 F.2d 631 (2d Cir. 1980)......................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................................6, 7

*Wang v. Hearst Corp.*,
    293 F.R.D. 489 (S.D.N.Y. 2013) ......................................................................10, 11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004).................................................................................6, 9

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013).....................7, 9, 16

**Other Authorities**

Fed. R. Civ. P. 23 ....................................................................................... *passim*

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 11.22, *et seq.*
(4th ed. 2002) ..........................................................................................................5, 6, 7, 12

## ARGUMENT

Subject to Court approval, Plaintiffs Lauren Ballinger and Matthew Leib (together, "Plaintiffs") and Defendant Advance Magazine Publishers, Inc. d/b/a Condé Nast Publications ("Defendant" or "Condé Nast") have settled this wage and hour class and collective action for a Maximum Settlement Amount[1] of $5,850,000.00.

The proposed settlement satisfies all of the criteria for preliminary approval under federal law.  Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Stipulation, attached as Exhibit A to the Declaration of Rachel Bien ("Bien Decl."); (2) conditionally certify the proposed settlement class under Federal Rule of Civil Procedure 23(b)(3); (3) appoint Outten & Golden LLP as Class Counsel; and (4) approve the proposed Notice of Class and Collective Action Settlement and the proposed Notice of Collective Action Settlement (together "Notices") (attached as Exhibits B and C to the Bien Decl.) and direct their distribution.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Overview of Litigation

On June 13, 2013, Plaintiffs filed a Class Action Complaint alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to pay them and other Condé Nast interns the minimum wage for the hours they worked. ECF No. 1 (Compl.) ¶¶ 5-6.  On November 26, 2013, Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to § 216(b) of the FLSA, which Defendant opposed.  ECF Nos. 23-25, 33-35, 39.  The Court denied the motion as moot on July 30, 2014. ECF No. 52.

---

[1]    Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Stipulation.

### B.      Settlement Negotiations

The parties participated in three settlement conferences with the Court on February 4, 2014, February 27, 2014, and March 19, 2014.  Bien Decl. ¶ 13.  On March 19, 2014, the parties reached agreement on the settlement amount and other key terms.  *Id.*¶ 14.  During the next several months, the parties negotiated the remaining terms of the settlement, which they memorialized in the Settlement Stipulation that all parties have executed.  *Id.*¶ 15.  At all times, the parties conducted negotiations on an arm's-length basis.  *Id.*¶ 16.

## II.      SUMMARY OF THE SETTLEMENT TERMS

### A.      The Settlement Fund

Defendant has agreed to pay a Maximum Settlement Amount of $5,850,000 to cover payments to Participating Class Members, Court-approved attorneys' fees, costs, expenses, and service payments, and the claims administrator's fees.  Ex. A (Settlement Stipulation) §§ 1(u), 2, 7.

### B.      Class Members

The Settlement Stipulation covers two partially overlapping groups of Class Members.  The FLSA Settlement Collective includes all individuals who had an Internship at Condé Nast between June 13, 2010 and the date of the Court's preliminary approval of the Settlement Stipulation.  Ex. A (Settlement Stipulation) § 5.  The New York Rule 23 Settlement Class includes all individuals who had an Internship in New York State at Condé Nast between June 13, 2007 and the date of the Court's preliminary approval of the Settlement Stipulation.  *Id.*

The Settlement Stipulation defines "Internship" as "time spent by an individual who was unpaid or paid less than the minimum wage then in effect while performing activities for Condé

Nast during the Applicable Class Period and while performing those activities was identified by Condé Nast as an intern." *Id*. § (1)(s).

### C.   Releases

The Settlement Stipulation provides that upon the Effective Date, each New York Rule 23 Class Member who has not submitted a valid and timely Request for Exclusion Form and each FLSA Collective Member who has submitted a Valid Claim Form will release and discharge Defendant from any and all wage and hour claims under the FLSA or NYLL from June 13, 2007 through the date of the Court's preliminary approval of the Settlement Agreement. Ex. A (Settlement Stipulation) § 15.

### D.   Allocation Formula

Participating Class Members will be paid pursuant to an allocation formula based on three factors: (a) whether the Internship was a Closet Internship; (b) whether the Internship was during the Summer; and (c) whether the Internship paid a Stipend.  Ex. A (Settlement Stipulation) § 6.

A Closet Internship is defined as "an internship in which the primary activities during the internship were performed in a closet used to hold clothing, jewelry and/or accessories at a Condé Nast Fashion Magazine." *Id.* § 1(l).

A Summer Internship is defined as "an internship that was primarily, or exclusively, performed between May 15 and August 15 of a calendar year." *Id*. § 1(mm).

A Stipend is defined as "a payment or combination of payments, which was less than minimum wage and made in recognition of the performance of an internship, with the amount of the stipend payment having the potential to vary with the number of hours, days and/or internships and the time period in which the internship was performed." *Id*. § 1(ll).

3

The allocations reflect the relative damages allegedly suffered by Class Members depending on the type of internship they had, the time of year in which they interned, and whether or not they were paid a Stipend.  Bien Decl. ¶ 23.

Below are the estimated payments to Participating Class Members:

| Internship Type | If Stipend Was Received | If No Stipend Was Received |
| --- | --- | --- |
| Summer "Closet" Internship | $1,400 | $1,900 |
| Summer Internship (Not "Closet") | $1,000 | $1,400 |
| All Other Internships | $700 | $1,250 |

These amounts may be reduced on a *pro rata* basis depending on the number of Class Members who return claim forms.  Ex. A (Settlement Stipulation) § 6.

### E.    Attorneys' Fees and Costs

Plaintiffs' Counsel will seek Court approval for 11.11% ($650,000.00) of the Maximum Settlement Amount for their Attorneys' Fees, plus Lawsuit Costs of no more than $10,000.00. Ex. A (Settlement Stipulation) § 8(a).  Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiffs will move for Court approval of their Attorneys' Fees and Costs simultaneously with their Motion for Final Approval of the Settlement.

### F.    Service Payments

In addition to their payments under the allocation formula, Plaintiffs will apply for Service Payments of no more than $10,000 each in recognition of the services they rendered to the Class and any risks they incurred.  Ex. A (Settlement Stipulation) § 9(a).  Plaintiffs will move for Court approval of the Service Payments simultaneously with their Motion for Final Approval of the Settlement.

### G.    Settlement Claims Administrator

The parties have designated Angeion Group as Settlement Claims Administrator.  Ex. A (Settlement Stipulation) § 1(f).  The Claims Administrator's Fees and Costs will be paid from the Fund.  *Id*. §§ 1(g), 10(e).

## III.    CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.    Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests.

With this Motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Stipulation, conditionally certifying New York Rule 23 Settlement Class, approving the parties' proposed Notices, and authorizing the Claims Administrator to send them.

The parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.    The Notice Package, containing the applicable Notice Form, Claim Form, and a postage-paid, pre-addressed return envelope, will be mailed to Class Members within 45 days after the Court grants Plaintiffs' Motion for Preliminary Approval of Settlement.  Ex. A (Settlement Stipulation) § 13(b).

2.    Class Members will have 90 days after the date the Notice Packages are mailed to submit a Valid Claim Form, opt out of the settlement, or object to it.  *Id.* §§ 1(e); 13(e), (j), (k).

3.    A final fairness hearing will be held as soon as is convenient for the Court after the end of the Claim Period.

4.    Plaintiffs will file a Motion for Final Approval of Settlement not later than 14 days before the Fairness Hearing.

5.    After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no party appeals the Court's Final Order and Judgment, the Effective Date of the Settlement Agreement will be 35 days after the Court enters its Final Approval Order.  *Id.* § 1(n).  If an individual or party appeals the Court's Final Order and Judgment, the Effective Date shall be the date on which all such appeals (including, *inter alia*, petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review) have been finally disposed and can no longer be appealed or reviewed.  *Id.*

6.    The Claims Administrator will disburse settlement checks to the Participating Class Members within 30 days after the Effective Date.  *Id.* § 13(l)(i).

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998).  "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential

risks." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013); *Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 1265909, at *1 (S.D.N.Y. Mar. 27, 2014) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . .") (internal quotation marks and citation omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clem*, 2014 WL 1265909, at *1. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (3d ed.) § 30.41)).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

If the settlement was achieved through arm's-length negotiations involving experienced counsel, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for

that of the parties who negotiated the settlement." *Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *4 (S.D.N.Y. June 20, 2014) (internal quotation marks and citation omitted); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Preliminary approval is the first step in the settlement process.  It simply allows notice to issue and for Class Members to object to or opt out of the settlement.  After the Claims Period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

**A.     The Settlement Is Fair, Reasonable, and Adequate.**

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The *Grinnell* factors strongly weigh in favor of approval of the Settlement Stipulation.

**1.     Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 7500 Class Members and claims under federal and state law.

Extensive discovery would be required to establish liability and damages and to support Plaintiffs' anticipated class certification motion and Defendant's opposition to such motion.  The parties would likely move for summary judgment, which would require extensive briefing and

delay resolution of the merits.  If the Court determines that fact disputes preclude summary judgment, a fact-intensive trial would be necessary.  Any judgment would likely be appealed, further extending the litigation.  This settlement, on the other hand, provides significant relief to Participating Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

> **2.**   **The Court Cannot Asses the Reaction of the Class Until After Notice Issues (*Grinnell* Factor 2).**

Because Class Members have not been notified of the settlement at this stage, the Court will be in a better position to more fully analyze this factor after the Claims Period closes when it must decide whether to grant final approval of the settlement.  Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

> **3.**   **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).**

The parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin*, 391 F.3d at 537 (citations omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian*, 80 F. Supp. 2d at 176 (citation omitted).

The parties' discovery here meets this standard.  Plaintiffs' Counsel interviewed interns from several Condé Nast magazines both before and during the litigation, including the Plaintiffs, and the parties engaged in extensive back and forth during three days of settlement negotiations regarding Plaintiffs' damages estimates and the evidence supporting liability.  Bien Decl. ¶¶ 9, 13.  This factor favors preliminary approval.  *See Yuzary*, 2013 WL 5492998, at *6

(granting final approval of class settlement reached early in case, where the parties conducted an "efficient, informal exchange of information"); *Frank*, 228 F.R.D. at 185 (approving settlement of case "in the relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and the time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").

4.   **Plaintiffs Would Face Risk If the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiffs believe their case is strong, it is subject to risk. "Litigation inherently involves risks." *Clem*, 2014 WL 2895918, at *6 (citation omitted). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id.* (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted).

Here, there is risk because the Second Circuit has not yet resolved the legal test that applies to interns. Two district courts in this Circuit adopted different tests for determining whether an intern is an employee under the FLSA. Compare *Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516, 531-32 (S.D.N.Y. 2013), *with Wang v. Hearst Corp.*, 293 F.R.D. 489, 492-94 (S.D.N.Y. 2013). Two very different outcomes resulted in these cases – in one, the court granted summary judgment to the plaintiffs; in the other, the court denied summary judgment. These very different outcomes demonstrate the uncertainty that the parties face. The proposed settlement alleviates this uncertainty. This factor therefore weighs in favor of preliminary approval.

### 5. Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not ruled on Plaintiffs' pending collective action motion.  A motion for class certification under Rule 23 would require significant discovery and intense, exhaustive briefing. The very different outcomes in the *Glatt* and *Wang* cases with respect to class certification demonstrate the risk that the parties face.  Compare *Glatt*, 293 F.R.D. at 534-38, *with Wang*, 293 F.R.D. at 494-98.  Settlement eliminates this risk, expense, and delay.  This factor favors preliminary approval.

### 6. Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

It is not clear whether Defendant could withstand a greater judgment.  However, even if it could, its ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (internal quotation marks and citation omitted).  Therefore, this factor is neutral and does not preclude the Court from granting preliminary approval.

### 7. The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

The settlement amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs prevailed and maintained a class through trial and on appeal.  The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum."  *Clem*, 2014 WL 2895918, at *7 (internal quotation marks omitted).  "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

11

completion." *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.

1972)) (internal quotation marks omitted).  "[T]here is no reason, at least in theory, why a

satisfactory settlement could not amount to a hundredth or even a thousandth part of a single

percent of the potential recovery."  *Grinnell*, 495 F.2d at 455 n.2.

Here, the settlement provides much more than "a fraction of the potential recovery."  By

Plaintiffs' Counsel's estimation, the Participating Class Member payments discussed *supra* at

II.D. represent more than 60% of the unpaid wages.  Bien Decl. ¶ 25.  These payments, which

range from $700 to $1,900, are substantial.  *Id.* ¶ 24.  Weighing the benefits of the settlement

against the available evidence and the risks associated with proceeding in the litigation, the

settlement amount is reasonable.

## V.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

For settlement purposes, Plaintiffs seek to certify the Rule 23 New York Settlement Class

under Federal Rule of Civil Procedure 23(e).  As discussed below, the Rule 23 New York

Settlement Class meets all of requirements for class certification, and Defendant does not oppose

certification for settlement purposes only.  Ex. A (Settlement Stipulation) § 5; *see also Newberg*

§ 11.27 ("When the court has not yet entered a formal order determining that the action may be

maintained as a class action, the parties may stipulate that it be maintained as a class action for

the purpose of settlement only."); *Cnty. of Suffolk v. Long Island Lighting Co*., 710 F. Supp.

1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a

proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part*

*on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Settlement class certification and appointment of class counsel have several practical

purposes, including avoiding the costs of litigating class status while facilitating a global

settlement, ensuring notification of the terms of the settlement, and setting the date and time of the final approval hearing. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class).

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

(1)   the class is so numerous that joinder of all members is impracticable;
(2)   there are questions of law or fact common to the class;
(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that:

[Q]uestions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* at (b)(3).

### A.   <u>Numerosity</u>

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted). Plaintiffs easily satisfy this requirement because there are approximately 7,500 Class Members. Bien Decl. ¶ 30.

### B.   Commonality

The New York Rule 23 Settlement Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, the Plaintiffs allege that they and the New York Rule 23 Settlement Class were subject to the same policy of classifying them as non-employees who are not entitled to minimum wage and overtime protections.  This common factual and legal question is sufficient to satisfy commonality for settlement purposes.  *See Clem*, 2014 WL 2895918, at *2 (commonality satisfied where plaintiffs alleged they and settlement class members were misclassified as exempt from overtime requirements).

### C.     Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Guiliani,* 126 F.3d, 372, 376 (2d Cir. 1997) (internal quotation marks and citation omitted).

In this case, Plaintiffs and the New York Rule 23 Settlement Class Members all interned for Defendant's magazines and allege that, based on their status as interns, they suffered the same violation of the law.  This is sufficient to satisfy the typicality requirement.  *See Clem*, 2014 WL 2895918, at *3 (typicality satisfied where "[p]laintiffs' wage and hour claims ar[o]se from the same factual and legal circumstances that form[ed] the basis of the [c]lass [m]embers' claims").

### D.     Adequacy of the Named Plaintiffs and Their Counsel

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the

class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks and citation omitted).

Plaintiffs do not have interests that are antagonistic to or at odds with the Class Members' interests.  *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (adequacy met where there was no evidence that the plaintiffs' and class members' interests were at odds).  Plaintiffs have also selected counsel who are adequate to represent the class's interests.  *See Glatt*, 293 F.R.D. at 537-38 (appointing Outten & Golden LLP as class counsel).

### E.    Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594, 623 (1997).

#### 1.    Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation marks and

citation omitted).  The predominance requirement is "more demanding than the Rule 23(a) commonality inquiry and is designed to determine whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623) (internal quotation marks omitted).

Here, Plaintiffs' common contention – that they were employees entitled to be paid the minimum wage – predominates over any factual or legal variations among Class Members.  *See Clem*, 2014 WL 1265909, at *4 (common contention that plaintiffs were misclassified as exempt predominated over any individual issues); *Yuzary*, 2014 WL 1265909, at *4 (same).

### 2.    A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis examines whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  The class action device is superior in this case because Class Members have limited financial resources with which to prosecute individual actions and there have been no individual suits brought by Class Members alleging the same violations.  *See* Fed. R. Civ. P. 23(b)(3).  In addition, employing the class device here will achieve economies of scale, will conserve the resources of the judicial system, and will avoid the waste and delay of repetitive proceedings and inconsistent adjudications of similar issues and claims.  *See Damassia v. Duane Reade*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. May 27, 2008).

## VI.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex

litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23(g) advisory committee's note.

Plaintiffs' Counsel satisfy these criteria.  They have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims.  Bien Decl. ¶¶ 8-16.  Additionally, Plaintiffs' Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions.  *Id.* ¶ 7.  Accordingly, courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel in wage and hour class actions.  *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013) (O&G attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law") (internal quotation marks and citation omitted); *Capsolas*, 2012 WL 1656920, at *2 (same) (citations omitted).

## VII.   THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The Notices fully comply with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;

> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)    that the court will exclude from the class any member who requests exclusion;
>
> (vi)    the time and manner for requesting exclusion; and
>
> (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notices satisfy each of these requirements.  Additionally, they describe the terms of the settlement, inform the class about the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing.  *See* Exs. B & C to Bien Decl.

The Settlement Stipulation provides that the Notices will be mailed by the Claims Administrator to the last known address and email, to the extent available, of each Class Member within 45 days of preliminary approval.  Ex. A (Settlement Stipulation) § 13(b).  In addition, the Claims Administrator will send the Notice to Class Members with LinkedIn accounts via LinkedIn.  *Id*. § (d)(i).  The Notices will also be posted on two websites for the duration of the Claim Period.  *Id*. § 13(c) & (d)(ii).

The Claims Administrator will take reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as undeliverable and will attempt re-mailing.  *Id.* § 13(g).  The Claims Administrator will send a reminder mailing 21 days after the first day of the Claim Period by email and first class mail.  *Id.* § 13(f); Ex. D.  Class Members will have 90 days after the date on which the Notices are mailed to submit a Valid Claim Form, opt out of the settlement, or object to it.  *Id.* §§ 13(e), (j), (k).  The Claims Administrator will disburse settlement checks to Participating Class Members within 30 days after the Effective Date.  *Id.* § 13(l)(i).

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated: November 13, 2014
       New York, New York

                                        Respectfully submitted,
                                        **OUTTEN & GOLDEN LLP**

                                        /s/ Rachel Bien
                                        Rachel Bien

                                        Rachel Bien
                                        Juno Turner
                                        Michael N. Litrownik
                                        3 Park Avenue, 29th Floor
                                        New York, New York 10016
                                        Telephone:  (212) 245-1000
                                        Facsimile:  (212) 977-4005

                                        *Attorneys for Plaintiffs*